IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| PUFFCUFF, LLC, a Georgia limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>QUALITY PLASTIC PRODUCTS, INC., an Illinois corporation,<br><br>Defendant. | Civil Action File No.<br>1:21-cv-04663-LMM<br><br>**Jury Trial Requested** |

**COMPLAINT FOR DAMAGES, DECLARATORY JUDGMENT AND OTHER RELIEF**

### I.   Overview of Action

1. This diversity action concerns a breach of contract by Quality Plastic Products, Inc. ("QPP"), with whom Georgia-based PuffCuff, LLC ("PuffCuff") contracted to produce various of its PuffCuff line of hair clamps. PuffCuff seeks (i) damages resulting from the defective products manufactured by QPP, including the expense of obtaining conforming product from and transitioning to another supplier and consequential damages resulting from the breach; (ii) a declaration

that, as a result of QPP's breach, PuffCuff has no obligation to make payment on invoices for the defective product; (iii) an order directing the return of unlawfully retained property of PuffCuff; and (iv) attorney's fees under O.C.G.A. § 13-6-11 based upon QPP's bad faith and dilatory conduct.

## II.   The Parties, Jurisdiction, and Venue

2. Plaintiff PuffCuff is a Georgia limited liability company, with its principal place of business in Georgia, whose members are Garrett and Ceata Lash, two individual residents of the metropolitan Atlanta area in the State of Georgia.

3. PuffCuff designs and sells hair tools and accessories especially for thick and curly hair, including its namesake PuffCuff hair clamps.

4. Defendant QPP is an Illinois company that holds itself out as a seller of manufactured plastic products. QPP's principal office is located at 830 Maple Ln, Bensenville, IL 60106, and it may be served with process by delivery of a copy of the Complaint to its registered agent, Michael Olsen, at the same address.

5. In that this action is between two corporate parties that are citizens of different states, and the amount in controversy exceeds $75,000, subject matter jurisdiction exists under 28 U.S.C. § 1332.

6. In that that QPP contracted with a Georgia company and arranged to ship defective product here, has committed tortious injury in the state, and that the damages occurred in Georgia, QPP has purposefully directed actions at PuffCuff and purposefully established contacts with PuffCuff and the State, and this Court has personal jurisdiction over QPP.

7. In particular, over a lengthy course of dealing, QPP has transacted business in the State of Georgia. From 2013 to present, it has regularly contracted with PuffCuff, a Georgia company, and regularly shipped products to PuffCuff in Georgia. QPP's principal, Mike Olsen, has also traveled to the State of Georgia in connection with QPP's business here.

8. The cause of action set forth in this Complaint arises out of the same transaction by QPP of business in this State and QPP's other conduct as detailed in this Complaint, as do the damages to PuffCuff.

9. Venue is appropriate in the Northern District of Georgia, where PuffCuff has its own principal place of business and where a substantial part of the events and omissions that are the subject of this action occurred.

### III. Overview of Action

*A. The Parties' Course of Dealing*

10. Beginning in 2013, PuffCuff began contracting with QPP to manufacture specific Puff Cuff products.

11. PuffCuff originally selected QPP as a manufacturer, and then continued to do business with it, based on PuffCuff's familiarity with QPP's operations and understanding of its capabilities.

12. PuffCuff had a substantial interest in having QPP, and not an unknown company, fulfill its orders.

13. Prior to the purchase orders at issue in this action, it was QPP who manufactured all products for PuffCuff.

14. This practice is consistent with usage in the manufacturing industry, in which a company contracts to manufacture products with a specific

facility, rather than permitting a manufacturer to outsource or to bring in an unknown and unverified company.

15. QPP also has drawings and specifications provided by PuffCuff. Based on the parties' ongoing business and communications, QPP understood, or should have understood, the general volumes PuffCuff might order.

16. Early on in the parties' business relationship, PuffCuff also requested, and QPP agreed and represented, that it would only use virgin resin, rather than regrind, which is reused and repurposed resin, often made with excess material and rejected parts.

17. Prior to manufacturing products, QPP would provide price quotes to PuffCuff, which would be updated from time to time. PuffCuff would accept these by purchase order sent to QPP.

### B. The Purchase Orders at Issue

18. The ten purchase orders at issue are QPPO048, QPPO049v2, QPPPO51v2, QPPO054GMA, QPPO053, QPPO055, QPPO056V2, QPPO057V3, QPPO058-GMA, and QPPO060.

19. QPP's invoices based on these purchase orders, totaling $256,802.21 (the "Defective Product Invoices") bear the same designations.

20. In issuing its purchase orders, based on the parties' previous transactions together, PuffCuff expected that QPP itself would manufacture those products, an expectation QPP understood and to which it agreed.

21. Each purchase order accordingly specifies QPP as the vendor.

22. But instead of honoring this requirement, without PuffCuff's knowledge or consent, QPP decided to outsource to an unapproved and unknown secondary manufacturer, Sun Pattern and Model, Inc. n/k/a Sun Pattern Plastics, Inc.

23. That decision by QPP and the quality problems that directly resulted from it, are the basis for the breach of contract that is the subject of this action, a breach that has caused PuffCuff substantial and ongoing damages.

### C. QPP Delivers Defective Products.

24. In 2021, QPP began delivering broken, breaking, and inherently unstable clamps. Many clamps, even before use, had visible cracking in them at stress-points.

25. On information and belief, these defects resulted, in part, from the unauthorized use of regrind.

26. PuffCuff learned of these defects when customers began complaining, including through public channels, about the cracking.

27. Properly manufactured PuffCuffs, unlike the defective products at issue, are durable and have a long product life.

28. These defects were not curable, in that they were intrinsic to the materials used or the manufacturing method.

29. Upon discovering the product defects, PuffCuff promptly gave notice of this breach to QPP.

30. Yet even then -- after the products had been delivered and then sent to customers, and after PuffCuff customers had already begun to complain and report defects – QPP continued to conceal the unauthorized outsourcing.

31. Only months afterward was QPP forced to disclose what it had been hiding - namely, the unauthorized outsourcing to Sun Pattern.

32. In additional to providing notice of the breach, PuffCuff has disputed the Defective Product Invoices.

33. Despite clear evidence of the defects and non-conformity, QPP has stubbornly and steadfastly refused to take responsibility for its breach.

34. Prior to filing this lawsuit, PuffCuff made extraordinary efforts to resolve this matter voluntarily.

35. QPP did not respond in good faith to PuffCuff's efforts at resolution. In fact, far from seeking to address its conduct and the problem, QPP simply stopped communicating with PuffCuff.

### D. QPP Retains PuffCuff's Property

36. Worse, QPP then decided to wrongfully retain business property of PuffCuff that, before learning of the breach, PuffCuff had entrusted its property into the care of QPP to assist in the manufacture of its products. That property (the "PuffCuff Property"), includes valuable product drawings, tooling, and machinery, as follows:

   a. One (1) Cavity Tool to product PuffCuff - Original
   b. One (1) Cavity Tool to product PuffCuff - Junior
   c. One (1) Cavity Tool to product PuffCuff - Mini
   d. One (1) Cavity Tool to product PuffCuff - Micro
   e. Four (4) Cavity Tools to product PuffCuff - Teeny
   f. Two (2) Cavity Tools to product PuffCuff - Tanglemaster
   g. Three (3) Rivet Machines
   h. Mold Base for Micro

37. QPP's wrongful retention of the PuffCuff Property has interfered with PuffCuff's operations and impeded it from transitioning manufacturing of all of its products to another manufacturer.

38. Although PuffCuff has requested multiple times that QPP return the PuffCuff Property, QPP has refused.

39. Among those requests is a letter from PuffCuff's counsel dated October 20, 2021. A true and correct copy of this correspondence is attached as Exhibit A to this Complaint.

40. As of the date of this filing, QPP has still not even responded, much less complied with the request.

41. The delivery of the defective hair clamps (the "Defective Cuffs") has caused a variety of damages to PuffCuff, including without limitation the costs of inspection and segregating the product, costs associated with returned product, legal expense, and impacts to its brand and reputation, a foreseeable consequence of producing non-conforming product of the sort delivered by QPP.

## IV. <u>Claims</u>

### COUNT I
### (Breach of Contract and Contractual Warranties)

42. PuffCuff restates, as if set forth fully herein, the allegations of paragraphs 1-41 above.

43. PuffCuff was and is fully capable of fulfilling all of its own obligations under the contracts at issue, and any and all conditions precedent to PuffCuff's claim for damages have occurred.

44. In issuing the orders, PuffCuff expected that the parties' previous course of dealing would continue, and that QPP, as vendor, would be manufacturing and delivering conforming products.

45. In fulfilling these contracts, QPP warranted, and was obligated to provide, merchantable products and products fit for their intended use.

46. QPP also warranted and represented that it would use virgin resin and not regrind.

47. Concerning their purpose, the clamps are intended to hold hair and thus to be opened and closed regularly over time.

48. The Defective Cuffs – which were delivered either cracked or susceptible because of their brittleness and poor manufacturing -- fracture easily at a certain point on the hinge.

49. The Defective Cuffs are also not of even kind and quality among all units; do not function consistently; are not manufactured in accordance with good manufacturing practice and in a defect-free manner; and, on information and belief, were produced using regrind and not virgin resin.

50. The Defective Cuffs are not merchantable and are unfit for their ordinary and intended purpose.

51. As a direct and foreseeable result of these breaches of warranty and of contract by QPP, PuffCuff has been damaged, in an amount to be proven at trial, but exceeding $75,000, including incidental, consequential, and actual damages.

52. Among those consequential damages are the lost revenue, and impairment of reputation and goodwill caused by QPP's unauthorized outsourcing and delivery of defective products

## COUNT II
### (Conversion of Property/Trover)

53. PuffCuff restates, as if set forth fully herein, the allegations of paragraphs 1-41 above.

54. PuffCuff requested, by letter from its counsel, the return of all the Puff Cuff Property.

55. Despite this unequivocal demand, QPP has not returned, and has wrongfully retained and refused to return, the PuffCuff Property.

56. QPP has and continues to exercise dominion over the PuffCuff Property, without authorization and wrongfully.

57. QPP remains in possession of the QPP Property as of the date of this filing.

58. QPP's actions and conversion of the QPP Property render it liable in trover.

59. As a result of QPP's conversion PuffCuff has been harmed, and asks that the Court permit it, upon election, to recovery of the property and its hire or to recover money damages, in an amount to be proven at trial, but not less than $150,000, compensating it for the loss of the property.

60. In retaining this property, QPP has acted intentionally and willfully, such that exemplary damages should be awarded.

## COUNT III
### (Declaratory Judgment)

61. PuffCuff restates, as if set forth fully herein, the allegations of paragraphs 1-41 above.

62. Because QPP continues to take the position that PuffCuff should pay the Defective Product Invoices, an actual controversy between the parties exists.

63. As a result of this mistaken position, QPP has taken various improper actions, among them, including retaining funds paid in furtherance of a compromise proposal that QPP rejected and wrongfully retaining the PuffCuff Property, placing PuffCuff in a position of uncertainty.

64. As provided by 28 U.S.C. § 2201 *et seq.*, PuffCuff thus requests that the Court issue declaratory judgment including determinations that (i) QPP breached the contracts represented by the Defective Product Invoices, (ii) QPP has no right to retain any of the PuffCuff Property, (iii) PuffCuff has no present obligation or liability to make any payment to QPP related to or arising from the Defective Product

Invoices; and (iv) QPP has no right to retain, and must return, any funds previously paid against the Defective Product Invoices.[1]

65. PuffCuff also requests such other relief associated with these determinations that the Court issue such other necessary relief that the Court may determine proper.

66. Such relief includes an order for the immediate return of the PuffCuff Property.

67. Because of QPP's wrongful retention of that property, PuffCuff's ability to fill orders and carry-on operations, including by transitioning to a new manufacturer, is impeded.

68. This injury is serious and immediate, and the impacts of not being able to fill orders and continue to develop its market, and not susceptible to calculation in money damages.

---

[1] PuffCuff's efforts to resolve this dispute included proposing a voluntary payment as part of an overall resolution and making a payment toward that plan. Because QPP did not participate in settlement discussions in good faith and rejected the proposal, PuffCuff also seeks to recover this payment in the amount of $75,000.

69. PuffCuff thus lacks an adequate remedy at law, in the immediate short term, for the unlawful retention of the PuffCuff Property, and respectfully requests that the Court issue injunctive relief, ordering its return.

## COUNT IV
### (Attorney's Fees Under O.C.G.A. § 13-6-11)

70. PuffCuff restates, as if set forth fully herein, the allegations of paragraphs 1-41 and 64-65 above.

71. QPP has consistently failed to acknowledge the damage and injury it has caused, taking a "so sue me" approach to outreach efforts.

72. QPP's actions have caused PuffCuff unnecessary trouble and expense

73. QPP has acted in bad faith.

74. As a result of QPP's actions, it is liable under O.C.G.A. § 13-6-11 for PuffCuff's attorney's fees incurred in connection with this matter.

## V.  Request for Relief

WHEREFORE, Plaintiff PuffCuff prays for an award of the following relief against QPP as follows:

a)   For money damages under Count I, in an amount to be proven at trial in excess of $75,000, including without limitation PuffCuff's

damages resulting from QPP's breach of contract, breach of warranties, and conversion of the QPP Property;

b) For money damages under Count II, in an amount to be proven at trial and in excess of $150,000, including without limitation PuffCuff's damages resulting from QPP's breach of contract, breach of warranties, and conversion of the QPP Property, in addition to exemplary damages;

c) For declaratory judgment under Count III that (i) QPP breached the contracts represented by the Defective Product Invoices, (ii) QPP has no right to retain any of the PuffCuff Property, (iii) PuffCuff has no present obligation or liability to make any payment to QPP related to or arising from the Defective Product Invoices; and (iv) QPP has no right to retain, and must return, any funds previously paid against the Defective Product Invoices

d) For attorney's fees under Count IV and in accordance with O.C.G.A. § 13-6-11;

e) For pre- and post-judgment interest as provided by law;

f) For a trial by jury on all issues so triable; and

g) For such other and further relief that the Court deems just, equitable and proper.

Dated: November 10, 2021.

        Respectfully submitted by

        THE FLAKE LAW FIRM, LLC

        */s/ Andrew B. Flake*
        Andrew B. Flake
        Georgia Bar No. 262425

        1778 Century Blvd. NE, Suite A
        Atlanta, Georgia 30345
        Telephone: 678-528-1688
        E: andrew.flake@flakelaw.com

        Counsel for Plaintiff
        PuffCuff, LLC